**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Vantage Technologies Knowledge Assessment, LLC, d/b/a Vantage Learning, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 08-4743 |
| | : | |
| v. | : | |
| | : | |
| College Entrance Examination Board, | : | |
| | : | |
| Defendant. | : | |

**DECLARATION OF STEVEN TITAN IN SUPPORT
OF DEFENDANT'S MOTION TO STAY**

**STEVEN TITAN**, declares as follows:

1.     I am Treasurer for Defendant College Entrance Examination Board ("College Board"). Starting in 2003, I supervised the finance liaisons for the College Board programs, including ACCUPLACER®. In May 2006, I assumed responsibility for running the ACCUPLACER program. I submit this declaration in support of the College Board's Motion to Stay. I make this declaration based upon personal knowledge, conversations with knowledgeable College Board employees, and review of documents. I would testify to the facts stated herein if called upon to do so.

2.     The College Board is a New York not-for-profit membership association whose mission is to connect students to college success and opportunity. Founded in 1900, the association is composed of more than 5,400 schools, colleges, universities and other educational organizations. Among its best-known programs are the SAT®, the PSAT/NMSQT® and the Advanced Placement Program® (AP®).

-1-

3.      In the 1980s, the College Board jointly developed, along with Educational Testing Service, a test that later would be called ACCUPLACER.  ACCUPLACER is a computer-adaptive placement test that adjusts to the level of the student, providing more difficult questions for students who answer questions correctly.  Community colleges, four-year colleges, technical schools, and high schools use ACCUPLACER to accurately assess students' skills for placement in appropriate courses.

4.      In 1998, Vantage Technologies Knowledge Assessment LLC ("Vantage") approached the College Board about developing a writing assessment module for ACCUPLACER.  That module would later be called WritePlacer®.  On May 8, 1998, the College Board executed a contract for Vantage to provide WritePlacer services, effective May 1, 1998 (the "1998 WritePlacer Contract"), as part of the College Board's ACCUPLACER program.  A true and correct copy of the 1998 WritePlacer Contract from the College Board's files is annexed hereto as Exhibit A.

5.      The 1998 WritePlacer Contract provided:

> **ARBITRATION**. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled [sic] arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgement [sic] on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The above notwithstanding in the case of breach of the Confidentiality clause above Vantage Technologies, Inc. would be entitled to pursue any remedies available by law including seeking injunctive relief.

Exhibit A ¶ 20.

6.      The College Board and Vantage also began discussing a service arrangement to administer ACCUPLACER tests over the Internet.  Previously, ACCUPLACER had been administered locally by customers as a DOS- or Windows-based program.  On or about March 1, 1999, the College Board executed a contract for Vantage to administer ACCUPLACER over the Internet (the "1999 ACCUPLACER Contract").  A true and correct copy of the 1999

–2–

ACCUPLACER Contract from the College Board's files is annexed hereto as Exhibit B.  The 1999 ACCUPLACER Contract provided for arbitration of disputes.  Exhibit B ¶ 17(a).

7.      Although the 1998 WritePlacer Contract expired by its terms on June 30, 1999, Vantage continued to provide WritePlacer services to the College Board.  And on May 16, 2001, the parties executed another WritePlacer agreement, effective July 1, 2000 (the "2000 WritePlacer Contract").  A true and correct copy of the 2000 WritePlacer Contract from the College Board's files is annexed hereto as Exhibit C.  The 2000 WritePlacer Contract provided for arbitration of disputes in the same language as the 1998 WritePlacer Contract.  *Compare* Exhibit A ¶ 20, *with* Exhibit C ¶ 20.

8.      The 1999 ACCUPLACER Contract and 2000 WritePlacer Contract both expired by their terms on June 30, 2002.  Prior to the expiration of those agreements, Vantage and the College Board began negotiating new contracts.  With respect to WritePlacer services, Vantage sent the College Board a draft agreement (the "Draft 2002 WritePlacer Contract") that, among other things, included identical arbitration language as the 1998 and 2000 WritePlacer Contracts.  *Compare* Exhibit A ¶ 20 *and* Exhibit C ¶ 20, *with* Exhibit D ¶ 21.  The College Board commented on Vantage's draft, but there was no dispute about the arbitration provision.  A true and correct copy of the Draft 2002 WritePlacer Contract (with the College Board's comments) from the College Board's files is annexed hereto as Exhibit D.  Vantage and the College Board did not execute a WritePlacer agreement in 2002.

9.      Although the 2000 WritePlacer Contract expired, Vantage continued to render the same services, and the College Board continued to receive invoices and to pay them pursuant to the terms of the lapsed contract.  Vantage and the College Board's relationship with respect to WritePlacer continued unabated and unchanged.

\\NY - 087890/000017 - 1102285 v1

10.     Vantage and the College Board, however, did execute another ACCUPLACER agreement in 2002.  On July 31, 2002, Alan Heaps, the College Board's Vice President overseeing the ACCUPLACER program at the time, executed an agreement for continued ACCUPLACER services, effective July 1, 2002 (the "2002 ACCUPLACER Contract").  A true and correct copy of the 2002 ACCUPLACER Contract from the College Board's files is annexed hereto as Exhibit E.  The 2002 ACCUPLACER Contract provided for arbitration of disputes in the same language as the 1999 ACCUPLACER Contract.  *Compare* Exhibit B ¶ 17(a), *with* Exhibit E ¶ 17(a).

11.     On or about March 22, 2004, Vantage expanded its relationship with the College Board by contracting to provide writing assessment services for the College Board's online SAT preparation service.  A true and correct copy of the SAT Services Agreement, dated March 22, 2004, from the College Board's files is annexed hereto as Exhibit F.  Vantage provided writing assessment services to the SAT program for three years before it terminated the relationship in 2007.  The SAT Services Agreement provided for arbitration of disputes.  Exhibit F ¶ 19.05.

12.     On June 30, 2005, the 2002 ACCUPLACER Contract expired by its terms.  Prior to the expiration of that agreement, Vantage and the College Board began negotiating new contracts for ACCUPLACER and WritePlacer services.  With respect to WritePlacer services, Vantage sent the College Board a draft agreement (the "Draft 2005 WritePlacer Contract") that, among other things, included identical arbitration language as the 1998 and 2000 WritePlacer Contracts and Draft 2002 WritePlacer Contract.  *Compare* Exhibit A ¶ 20, Exhibit C ¶ 20, *and* Exhibit D ¶ 21, with Exhibit G ¶ 21.  The College Board did not object to the arbitration provision, and the arbitration provision was not at issue in negotiations concerning the draft agreement.  A true and correct copy of the Draft 2005 WritePlacer Contract from the College

Board's files is annexed hereto as Exhibit G.  Vantage and the College Board did not execute a WritePlacer agreement in 2005.

13.     Vantage and the College Board, however, did execute another ACCUPLACER agreement in 2005.  On June 30, 2005, the College Board executed an agreement for continued ACCUPLACER services, effective July 1, 2005 (the "2005 ACCUPLACER Contract").  A true and correct copy of the 2005 ACCUPLACER Contract from the College Board's files is annexed hereto as Exhibit H.  The 2005 ACCUPLACER Contract provided for arbitration of disputes in the same language as the 1999 and 2002 ACCUPLACER Contracts.  *Compare* Exhibit B ¶ 17(a) *and* Exhibit E ¶ 17(a), *with* Exhibit H ¶ 18(a).

14.     The College Board's primary relationship with Vantage has been through the ACCUPLACER program, including WritePlacer.  For over 10 years, every draft agreement – whether for the ACCUPLACER or the SAT program – exchanged between the College Board and Vantage contained an arbitration clause.  The College Board always understood that the parties would arbitrate disputes arising out of their relationship.

15.     The College Board considers arbitration an efficient and cost-effective method for alternative dispute resolution.

16.     When the parties had a dispute about the proper interpretation of the 2005 ACCUPLACER Contract, that dispute was resolved in arbitration.  Vantage did not raise any concerns in that proceeding about arbitration as a proper forum for resolving disputes.  After a hearing, the arbitration panel issued an April 16, 2008 award resolving the dispute in favor of the College Board.

17.     On April 28, 2008, the College Board notified Vantage that it planned to terminate its contracts with Vantage effective June 30, 2009, and transition the ACCUPLACER relationship to another vendor.

18.     On May 2, 2008, Vantage notified the College Board that it planned to terminate WritePlacer services on May 17.  After settlement discussions, Vantage agreed that it would not terminate WritePlacer services on May 17.

19.     On June 23, 2008 – three days before the National ACCUPLACER Conference where the College Board announced to its customers the transition to a new service provider for ACCUPLACER – Vantage notified the College Board that it planned to terminate WritePlacer services on July 1, 2008.  In that notice, Vantage referenced a July 1, 2002 letter purportedly sent to the College Board, but when the College Board requested a copy of the letter, Vantage refused to provide it.

20.     Three days later, on June 26, 2008, Vantage filed a summons against the College Board in Bucks County, Pennsylvania, but did not notify College Board of the filing.

21.     On or about June 27, 2008, Vantage sent the College Board a draft agreement to continue WritePlacer services through June 30, 2009, that did not include an arbitration provision.  After negotiation, on July 11, 2008, the College Board executed the agreement, effective July 1, 2008 (the "2008 WritePlacer Contract").  A true and correct copy of the 2008 WritePlacer Contract from the College Board's files is annexed hereto as Exhibit I.

22.     On August 1, 2008, Vantage served the summons without complaint in this action.

23.     On August 11, 2008, after several disputes about Vantage's ACCUPLACER and WritePlacer services, the College Board filed a demand for arbitration with the American Arbitration Association.  A true and correct copy of the August 11, 2008 Demand for Arbitration is annexed hereto as Exhibit J.

24.     On or about August 28, 2008, Vantage responded to the Demand for Arbitration.  Vantage's response raised objections to, among other things, the arbitrability of claims related to

WritePlacer.  A true and correct copy of Vantage's response to the Demand for Arbitration, without exhibits, is annexed hereto as Exhibit K.

25.     On or about September 12, 2008, Vantage filed its Complaint, alleging claims concerning its WritePlacer services for the College Board from July 1, 2002 to June 30, 2008.  A true and correct copy of the Complaint, without exhibits, is annexed hereto as Exhibit L.

26.     On or about August 28, 2008, as an exhibit to Vantage's response to the Demand for Arbitration, the College Board received for the first time a document that purports to be a July 1, 2002 letter from Peter Murphy at Vantage to Sandra Miller Holst at the College Board.  A true and correct copy of letter attached as Exhibit B to Vantage's response to the Demand for Arbitration is annexed hereto as Exhibit M.

27.     After receiving a copy of the letter, I coordinated a search of the College Board's files, including Dr. Holst's files.  Although the College Board has Vantage-related files from 2002, there is no copy or other evidence of the purported July 1, 2002 letter.

28.     I also coordinated discussions with the former and current College Board employees who were working on the ACCUPLACER program in July 2002.  The letter was shown to Sandra Miller Holst, Director of the ACCUPLACER program and the letter's alleged recipient; Alan Heaps, the Chief of Staff and Vice President supervising the ACCUPLACER program, who executed the 2002 ACCUPLACER Contract on behalf of the College Board; Michael Cappeto, the Vice President who supervised the ACCUPLACER program after Mr. Heaps; Suzanne Murphy and Moon Sung, Associate Directors for the ACCUPLACER program in 2002; and Chandra Grant, a Program Associate for ACCUPLACER in 2002.  None of them recalled the College Board receiving the July 1, 2002 letter or similar correspondence from Vantage.

\\NY - 087890/000017 - 1102285 v1

29.    For these reasons and the reasons stated in its Memorandum of Law, the College Board requests that the Court grant Defendant's Motion to Stay.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York this 10th day of November 2008.

_____
Steven Titan