```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VANTAGE TECHNOLOGIES            :       CIVIL ACTION
KNOWLEDGE ASSESSMENT, LLC       :
                                :
        v.                      :
                                :
COLLEGE ENTRANCE EXAMINATION    :
BOARD                           :       NO. 08-4743
```

MEMORANDUM

Bartle, C.J.                                    December 18, 2008

   Plaintiff, Vantage Technologies Knowledge Assessment, LLC ("Vantage"), initiated this contract and tort action in the Court of Common Pleas of Bucks County against defendant College Entrance Examination Board ("College Board"), a not-for-profit corporation. College Board timely removed the action to this court in October, 2008.

   Before us is the motion of College Board to stay the instant proceedings pursuant to § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., pending arbitration of this dispute.

I.

   The following facts are undisputed unless otherwise noted. On May 8, 1998, Vantage and College Board entered into a written contract under which Vantage would oversee the online administration of "WritePlacer," College Board's proprietary writing assessment tool. The contract contained an agreement to arbitrate disputes arising out of or relating to the contract.

That agreement expired on June 30, 1999. On May 16, 2001, Vantage and College Board retroactively renewed the 1998 contract by entering into a new written agreement containing an identical arbitration clause. The contract also stated that "[t]his agreement may be supplemented, amended, or revised only in writing by agreement of the parties."

With the 2001 WritePlacer Agreement set to expire on June 30, 2002, the parties attempted to renew their written contract once more. Vantage sent to College Board a draft agreement which contained the same arbitration clause that the parties had included in their previous contracts. This time College Board rejected the draft. Nonetheless, the parties continued to do business without a written contract.

On July 1, 2002, Vantage sent a letter (the "2002 letter") to College Board in which it stated its intention to continue providing services for College Board only on a day-to-day basis with respect to the WritePlacer product. The 2002 letter contained a limited number of specific provisions, including that: (1) from July 1, 2002 onward, Vantage would bill College Board "$6.50 per human test" and "$2.95 for each IntelliMetric score rendered"; and (2) "termination and jurisdiction of this arrangement will be at Vantage's sole discretion." Vantage also stated in the letter that "[t]here are no further understandings."

College Board contends that it never received the 2002 letter and was unaware of it until the instant litigation

commenced.  It notes that Vantage provided services for several months after July 1, 2002, at lower pricing terms than those listed in the letter.  In response Vantage has provided an affidavit from Peter Murphy, Chief Executive Officer of Vantage.  Murphy states that the 2002 letter was both hand delivered and sent via U.S. Mail to a College Board executive, Sandra Holst, at the New York office of College Board in July, 2002.[1]

In any event, from July 1, 2002 until July 1, 2008, Vantage continued to provide the WritePlacer services without a formal contract signed by both parties.  In 2005, Vantage prepared a second draft WritePlacer contract which, among other things, provided for arbitration in language identical to the original WritePlacer agreement.  College Board again rejected the draft.  On July 1, 2008, College Board and Vantage entered into a new written WritePlacer contract without an arbitration clause.

College Board initiated arbitration in August, 2008, seeking a declaratory judgment concerning unpaid sums claimed by Vantage under the 2002 letter agreement.  In September, 2008, Vantage filed the instant law suit in state court.  The complaint includes claims for unjust enrichment, breach of contract, fraud

---

1.  College Board submitted an affidavit of one of its employees in which he stated that neither the 2002 letter nor any mention of it could be found in the company's files as of October, 2008.  However, that employee did not join College Board until 2003, a number of months after Peter Murphy said he mailed and hand delivered the 2002 letter.  Since the employee had no personal knowledge whether or not College Board received the 2002 letter, his affidavit has no probative value in this regard.

in the inducement, negligent misrepresentation, and false prosecution of an arbitration claim.

                              II.

Any arbitration provision in an agreement affecting interstate commerce is subject to the Federal Arbitration Act. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); 9 U.S.C. § 2.  Federal substantive law governs arbitrability determinations under the FAA, although state contract law principles, including defenses, may be applicable. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999).  On a motion to stay pending arbitration, the role of the court is to determine whether the parties have agreed to submit the dispute to arbitration and not to rule on the merits of the dispute.  See Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001).

The dispute in question arose between the parties at a time after the expiration of their written contract containing an arbitration clause and before the commencement of their 2008 written contract which did not include an arbitration provision. The question before us is whether the parties continued to be bound by the arbitration clause of an expired commercial contract when the parties have continued to do business after that contract's expiration.

College Board, which contends that the arbitration clause survived, relies on Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery and Tobacco Workers' Int'l, 28 F.3d 347 (3d

Cir. 1994). There, a labor union attempted to compel arbitration against an employer despite the recent lapse of the collective bargaining agreement ("CBA") which mandated such arbitration of disputes. The employees, however, had continued to fulfill their duties under the CBA while a new CBA was being negotiated.

Judge Becker, writing for a majority of the court, described the long history of arbitration as the standard method of dispute resolution in labor matters. Luden's, 28 F.3d at 359-60. He emphasized that such clauses are typically included for the workers' benefit in return for a promise not to strike or lock-out. Id. at 357 n.16. That is to say, "[t]he employer's uninterrupted fidelity to the arbitration provision stood as the implied consideration for the employees' continued diligent and loyal service." Id. at 357. The court explained that by "reap[ing] the benefits" of the employees' continued labor, the employer had implicitly assented to an "implied-in-fact" agreement to arbitrate. Id. at 355-61. While the court in its opinion referred to general contract principles, it was careful to describe its holding narrowly:

> We hold that in a continuing employment relationship an arbitration clause may survive the expiration or termination of a CBA intact as a term of a new, implied-in-fact CBA unless (i) both parties in fact intend the term not to survive, or (ii) under the totality of the circumstances either party to the lapsed CBA objectively manifests to the other a particularized intent, be it expressed verbally or non-verbally, to disavow or repudiate that term. This result injects substantially more stability and certainty into labor law, and

> promotes the primary statutory objectives of
> peaceful and stable labor relations
> underpinning the NLRA, at the slight cost of
> a notice requirement forcing a party to make
> clear its wish no longer to abide by the
> arbitration clause.

Judge Alito, now a justice of the United States Supreme Court, filed a dissenting opinion.  He expressed skepticism at the court's conclusion that the parties had agreed to an "implied-in-fact" arbitration clause where the employer's assent to that provision was not apparent from the record.  Id. at 364-65 (Alito, J., dissenting).  He further cautioned that the majority had bound the parties to arbitration "by operation of law" rather than by mutual assent, raising a possible conflict with the decision of the Supreme Court in Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 198-99 (1991).  Id. at 355-56 (Alito, J., dissenting).

A later case confirms our reading of the limited breadth of Luden's.  In Bogen Commc'ns, Inc. v. Tri-Signal Integration, Inc., the plaintiff sought to compel an arbitration in a commercial context where the contract requiring such arbitration had expired two years previously but where the parties had continued to do substantially similar business.  Civ. A. No. 04-6275, 2006 WL 469963 (D.N.J. Feb. 27, 2006), aff'd, 227 Fed. App'x 159 (3d Cir. 2007).  The district court refused to order arbitration even though the defendant had not explicitly disclaimed the arbitration clause at any point during the two years of continuing performance after the contract's expiration.

The court placed heavy emphasis on the fact that the expired contract had a provision requiring that modifications, including renewal, be accomplished only through a writing signed by both parties.  Id. at *4.  The Court of Appeals affirmed the refusal to compel arbitration under these circumstances.

On the record before us, it is undisputed that the contract which required the parties to submit disputes to arbitration had expired and that modifications to that contract, including extensions of its termination date, were required to be made in a writing signed by both parties.  No such modifications were ever made.[2]  At no point after July 1, 2002 did Vantage take any other action suggesting that it considered itself bound to arbitration with respect to disputes arising from the WritePlacer contract.[3]  And as in Bogen, the most recent contract signed by the parties does not contain an arbitration clause.

We also note that the facts in this case bear little similarity to those addressed by our Court of Appeals in Luden's.  There, the backdrop of labor relations was critical to the decision.  Arbitration clauses in such cases are typically included for the express benefit of labor in exchange for a

---

2. We need not reach the question whether the 2002 letter governed the parties' relationship between 2002 and 2008 because we conclude that Vantage's obligation to submit disputes to arbitration elapsed on June 30, 2002.

3. The parties did not arbitrate any disputes arising out of the WritePlacer contract between July 1, 2002 and the beginning of the instant dispute over six years later.  The arbitration clauses in the 1998 and 2001 WritePlacer contracts, likewise, were never invoked by either party.

promise not to strike.  <u>Luden's</u>, 28 F.3d at 357.  No similar exchange exists where two sophisticated commercial entities mutually decide to continue their relationship on a day-to-day basis in the absence of an agreement signed by both.

While federal policy favors arbitration and doubts concerning the scope of coverage should be resolved accordingly, <u>see</u> <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth</u>, 473 U.S. 614, 626 (1985), this policy cannot be invoked to create an arbitration provision in a contractual relationship where no such provision exists.  In sum, we conclude that the parties did not assent to the arbitration of disputes arising during the time period pertinent here.  Accordingly, we will deny the motion of College Board to stay this action pending arbitration.

```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VANTAGE TECHNOLOGIES         :        CIVIL ACTION
KNOWLEDGE ASSESSMENT, LLC    :
                             :
         v.                  :
                             :
COLLEGE ENTRANCE EXAMINATION :
BOARD                        :        NO. 08-4743
```

                                ORDER

       AND NOW, this 18th day of December, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant College Entrance Examination Board to stay this action pending arbitration is DENIED.

                                          BY THE COURT:


                                        /s/ Harvey Bartle III
                                                                  C.J.